UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

PAUL BURRITT,

        Plaintiff,

vs.

LISA DITLEFSEN, and
POLK COUNTY,                                          12-cv-909-wmc

        Defendants.

PLAINTIFF'S
MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR LEAVE
TO SUPPLEMENT HIS FED. R. CIV. P. 59(e)
MOTION TO ALTER AND AMEND JUDGMENT

INTRODUCTION

Fed. R. Civ. P. 59(e) empowers the district court to correct the manifest errors of a successful Rule 56 movant one last time before the case goes on appeal. Mr. Burritt moves the court respectfully for leave to supplement his Rule 59(e) Motion in view of the hours-old decision in *Tolan v. Cotton*, 572 U.S. ___, 13-551 (U.S. May 5, 2014).

*Tolan* is the case of the near-fatal 2008 shooting of Mr. Robert Tolan by Police Sergeant Jeffrey Cotton. Tolan sued Cotton under 42 U.S.C. § 1983 for unreasonable seizure by infliction of excessive force in violation of U.S. Const. amend. IV and XIV. The lower courts failed to view disputed, material facts at summary judgment in the light most favorable to nonmovant Tolan. Accordingly, the Court vacated and remanded the case for proper application of the clearly established summary judgment standard of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).[1]

---

[1] *Tolan*, 572 U.S. ___, ___, 13-551, p. 1 of 13 (U.S. May 5, 2014).

1

POINT I

THE TWO-PRONG
QUALIFIED IMMUNITY INQUIRY
REQUIRES THE COURT TO RESOLVE
GENUINE DISPUTES OF FACT IN THE NONMOVANT'S
FAVOR, REGARDLESS OF WHICH PRONG THE COURT APPLIES FIRST.

The two-prong qualified immunity inquiry requires the court to resolve genuine disputed facts in the nonmovant's favor, regardless of which prong the court applies first.

A. The Two-Prong Inquiry

Resolution of the qualified immunity defense in a § 1983 case at summary judgment requires a two-prong inquiry. First, the court must determine whether the defendant violated a constitutional or statutory right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), cited in *Tolan*, 572 U.S. at ___, 13-551 at p. 6 of 13. In the case of a claim of an unreasonable seizure in violation of the Fourth and Fourteenth Amendments, *id*., *Graham v. Connor*, 490 U.S. 386, 394 (1989), the court balances "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government's interests alleged to justify the intrusion.'" *Tolan*, 572 U.S. at ___, 13-551 at p. 6, quoting *Tennessee v. Garner*, 471 U.S. 1, 8, (1985), and *Garner*, 490 U.S. at 396.

Second, the court must determine whether the right was "clearly established" at the time of the violation. *Tolan*, 572 U.S. at ___, 13-551 at p. 6, citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The "state of the law" must give the government actor(s) "fair warning" that the alleged conduct is unconstitutional. Id. at 741, *Tolan* at ___, 13-551 at 6.

**B. Restricted Discretion**

Courts have discretion in the order of the application of each prong.  Id. at 6 – 7, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Under **neither prong,** however, may a court "resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan* at ___, 13-551 at 7, citing *Brosseau v. Haugen*, 543 U.S. 194, 195, n. 2 (2004) (*per curiam*), *Saucier*, 533 U.S. at 201, *Hope*, 536 U.S. at 733, n. 1, *Anderson*, 477 U.S. at 249, 255, Fed. R. Civ. P. 56(a). ("This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial[]'").

## POINT II

### DEFINING "CLEARLY ESTABLISHED LAW" IN THE "SPECIFIC CONTEXT OF THE CASE" PROHIBITS DEFINITION OF "CONTEXT" THAT IMPORTS GENUINELY DISPUTED FACTUAL PROPOSITIONS.

Defining "clearly established law" in the "specific context of the case" prohibits definition of "context" that "imports genuinely disputed factual propositions."[2]  In other words, the court that defines "clearly established law" in a manner that ignores genuine, outcome-determinative factual disputes, and that incorporates the movant's proposed factual findings into the contours of "governing" law without regard to contradictory admissible evidence, engages in improper "weighing" of evidence and commits

---

[2]*Tolan* at ___, 13-551 at 7, ¶2, citing *Saucier*, supra at 201, *Anderson v. Creighton*, 483 U.S. 635, 640 – 41 (1987), *Brosseau*, supra at 195, 198.

3

reversible error.  U.S. Const. amend. VII, *Tolan*, 572 U.S. at \_\_\_, 13-551 at 8, ¶1, citing *Anderson*, 477 U.S. at 249.

## A. The Errors of the *Tolan* Lower Courts

The Court found the *Tolan* lower courts committed four errors that required vacatur and remand.

First, the courts credited the officer's testimony of "dimly lit" conditions, and ignored directly contradictory testimony from Tolan's father that two floodlights shone on the scene, and Tolan's testimony that he "was not in darkness." *Tolan*, supra at \_\_\_, 13-551 at 8, ¶¶2 – 3.

Second, the lower courts credited the officers' testimony that Tolan's mother was "agitated" and "refused orders to remain quiet and calm." Id. at ¶ 3.  In contrast, Ms. Tolan testified that she was neither agitated nor "aggravated" when she told the officers that Tolan was her son and the automobile in question belonged to her family. Id. at ¶ 3 – p. 9, ¶ 1.

Third, the lower courts concluded that Tolan "shouted" and "verbally threatened" the officers.  Tolan testified that he, without screaming, did tell the officers -- who did throw his mother into the garage door and bruised her -- to "get your f#%king hands of my mom."  The Court found this to be a genuine disputed material fact, stating, "A jury could well have concluded that a reasonable officer would have heard Tolan's words not as a threat, but as a son's plea not to continue any assault of his mother." Id. at 9, ¶ 2 [citations omitted].

4

Fourth, the Fifth Circuit credited the officers' story that "Tolan was 'moving to intervene in Sergeant Cotton's interactions with his mother… crouching or in a charging position.' 713 F.3d at 305, … 308." *Tolan*, 572 U.S. at \_\_\_, 13-551 at 9, ¶3. Tolan testified, however, that he was on his knees when Cotton shot him, which his mother corroborated in the criminal trial of Cotton, and added he "wasn't going anywhere" and "did not jump up." Id. at 9, ¶ 3 – 10, ¶ 1.

**B.** *Tolan* **Summary**

The Court summarized as follows:

Considered together, these facts lead to the inescapable conclusion that the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion. And while "this Court is not equipped to correct every perceived error coming from the lower federal courts" [citation omitted], we intervene here because the opinion below reflects a clear misapprehension of summary judgment standards in light of our precedents.

…

The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to Tolan's competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party.

Applying that principle here, the court should have acknowledged and credited Tolan's evidence with regard to the lighting, his mother's demeanor, whether he shouted words that were an overt threat, and his positioning during the shooting…. We… vacate the Fifth Circuit's judgment so that the court can determine whether, when Tolan's evidence is properly credited and factual inferences are reasonably drawn in his favor, Cotton's actions violated clearly established law.

*Tolan*, 572 U.S. at \_\_\_, 13-551 pp. 10 – 11.

5

# POINT III

## *TOLAN* REQUIRES DENIAL OF SUMMARY JUDGMENT AND QUALIFIED IMMUNITY TO MS. DITLEFSEN, AND REQUIRES A TRIAL BY JURY FOR MR. BURRITT.

*Tolan* requires denial of summary judgment and qualified immunity to Ms. Ditlefsen, and requires a jury trial for Mr. Burritt.

**A. Recapitulation of Clearly Established Law**

Settled Seventh Circuit law, and sister circuit cases (with some citing the Seventh Circuit), are in agreement of the following uncontroversial principles. Probable cause does not require a mini-trial by the officer. Cherry-picking readily available facts, however, is a recipe for litigation: "'A reasonable officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest[, and r]easonable avenues of investigation must be pursued'" when it is unclear who committed a crime or whether a crime was committed at all." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1016 - 17 (7th Cir. 2006) (bank robbery case; alibi of being at plaintiff's parents' house working on computer; warrantless arrest of plaintiff made at parents' home the day after robbery while police execute search warrant for parents' computer; summary judgment rev'd and qualified immunity denied).

Clearly established Seventh Circuit and sister circuit law hold: (a) officers may not ignore known potentially exculpatory evidence in favor of known inculpatory evidence

6

before a warrantless arrest;[3] (b) officers may not rely on inculpatory, or equivocal, human witness testimony over contemporaneous exculpatory, disinterested photographic, electronic, or mechanical ("scientific") evidence, particularly alibi evidence;[4] (c) officers may not make a warrantless arrest without examining known, potentially exculpatory scientific "alibi" evidence first;[5] (d) officers may not make a warrantless arrest without questioning known, potentially exculpatory eyewitnesses first;[6] and (e) exigent circumstances do not exist in the warrantless arrest at home, or at work, of a suspected sex offender[7], or other suspected violent felon, within one day[8], or even *thirty-six minutes* of the first report of the suspected sex crime.[9]

---

[3]*Sornberger*, 434 F.3d at 1016 – 17 (warrantless arrest of plaintiff at parents' home in spite of search warrant for parents' computer that, as known to arresting police chief, would have either made or broken plaintiff's alibi), *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986) (failure to interview available father), *Jocks v. Tavernier*, 316 F.3d 133, 136 (2d Cir. 2003), *Bigford v. Taylor,* 834 F.2d 1213, 1218 (5th Cir.), cert. denied, 488 U.S. 822, 109 S. Ct. 66 (1988), *Gardenhire v. Schubert*, 205 F.3d 303, 315 – 16 (6th Cir. 200) (refusal to acknowledge exculpatory evidence of merchandise location), *Kuehl v. Burtis*, 173 F.3d 646, 650 – 51 (8th Cir. 1999) (refusal to acknowledge exculpatory witness statement or witness who changed statement to pro-plaintiff)
[4]*Baptiste v. J.C. Penney Co*, 147 F.3d 1252, 1257 (10th Cir. 1998) (exculpatory video), *Maxwell*, 998 F.2d at 433 – 34 (failure to obtain fingerprints to compare to fingerprint set sent by LAPD), *Sornberger*, 434 F.3d at 1016 (bank video), *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir. 2004) (negative tests for alcohol, cannabis, or other controlled substances disregarded in favor of officers' testimony of "odor" of cannabis)
[5]Id. at 1016 – 17, *Clipper v. Takoma Park, Md.*, 876 F.2d 17, 19 – 20 (4th Cir. 1989) (bank surveillance film),
[6]*Sornberger*, 434 F.3d at 1016, *Sevigny v. Dicksey*, 846 F.2d 953, 957 – 58 (4th Cir. 1988) (failure to interview eyewitness neighbors), *Kingsland*, 382 F.3d at 1228 - 29 (qualified immunity denied; "Without further fact-finding, it is impracticable to conclude that arguable probable cause existed for Kingsland's arrest when it is unclear how much of the proffered evidence tending to support a finding of arguable probable cause was manufactured or misrepresented, or what further knowledge, if any would be attributed to the defendants if they had investigated reasonably[;]")
[7]*Maxwell*, 998 F.2d at 433 – 34 ("America's Most Wanted")

Clearly established law holds that a warrantless arrest of individual at home is *per se* unreasonable, absent consent, hot pursuit, evanescent evidence, or exigent circumstances.[10]

Predicting *Tolan* and resting upon precedent settled long before the 2011 *Burritt* incident, *Rooni v. Biser*, 11-CV-827 (W.D. Wis. Feb. 13, 2013) (Crabb, Barbara, J.), aff'd in part, rev'd in part, and remanded, 742 F.3d 737, 741 – 42 (7th Cir. 2014) (Wood, J.), held that it was clearly established in 2005 that court may not weigh and interpret officer's story at plaintiff's expense, make credibility determinations, and opine as to the reasonableness of an officer's actions, in the face of directly contradictory, competent, and material plaintiff evidence, without being reversed on summary judgment.[11]

---

[8]*Sornberger*, 434 F.3d at 1016 (within one day of bank robbery), *Clipper*, 876 F.2d at 18 – 19 (within one day of 14 May bank robbery)

[9]*Cortez v. McCauley*, 478 F.3d 1108, 1113 (10th Cir. 2007) (*en banc*) (warrantless arrest of plaintiff at 1:00 a.m., following first report of suspected sexual assault at 12:24 a.m.), *Baptiste*, 147 F.3d at 1256 – 57 (same day as suspected shoplifting)

[10]*Payton v. New York*, 445 U.S. 573, 602 – 03 (1980) (own house; evidence suppressed), *Minnesota v. Olson*, 495 U.S. 91, 100 – 101 (1990) (one-day lapse in homicide investigation; warrantless arrest in other's dwelling; suppression aff'd), *State v. Sanders*, 2008 WI 85, 752 N.W.2d 713 (Wis. 2008) (suppression aff'd in warrantless arrest of cocaine distribution suspect); *Llaguno v. Mingey*, 763 F.2d 1560, 1564 – 65 (7th Cir. 1985) (Posner, J.) (*en banc*); *Reardon v. Wroan*, 811 F.2d 1025, 1029 – 30 (7th Cir. 1987), and *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) ("America's Most Wanted" case of child sexual assault suspect; no qualified immunity in warrantless arrest of suspect for failure to check fingerprints against known sample).

[11] *Abdullahi v. City of Madison*, 423 F.3d 763 773 (7th Cir. 2005)("At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[;]" summary judgment rev'd in excessive force case) *Chelios v. Heavener*, 520 F.3d 678, 686 – 88 (7th Cir. 2008) ("The probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them[;]'" factual dispute ignored by district court as reversible error)

**B. Disputed Material Facts That Require a Jury Trial for Mr. Burritt.**

Disputed material facts known to Ms. Ditlefsen at the moment of Mr. Burritt's warrantless home arrest in his home, directly contradictory evidence offered by Mr. Burritt, defeat "arguable probable cause". Impermissible evidence weighing by the district court and the failure to recognize disputed material, outcome-determinative facts that rest upon competence evidence require alteration and amendment of the judgment under Fed. R. Civ. P. 59(e), denial of qualified immunity and summary judgment for Ms. Ditlefsen, and a jury trial for Mr. Burritt under *Tolan*[12], *Anderson*[13], and Rule 56(a).

    1. <u>Pro-"Arguable Probable Cause"</u>

At the moment of her warrantless home arrest of Mr. Burritt, Ms. Ditlefsen knew the following:

    1)     Burritt was the medical van driver for SMH.

    2)     Burritt drove SMH from Impact Counseling in Hayward to her home in Birchwood.

    3)     The trip from Impact Counseling to Birchwood normally takes 42 minutes.[14]

    4)     The actual trip took two hours five minutes.

    5)     The trip took from 1615 (4:15 p.m.) to 1820 (6:20 p.m.).

    6)     SMH reported that Burritt drove her to Drummond.

    7)     SMH reported that Burritt drove her to his house in Turtle Lake.

    8)     Burritt lived on U.S. Highway 8.

---

[12]*Tolan v. Cotton*, 572 U.S. ___, ___, 13-551 at pp. 10 – 11.
[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)
[14]PPFF97 (Plaintiff's Proposed Finding of Fact #97)

9)   SMH reported that Burritt assaulted him in his driveway.

10)  SMH reported that she slammed the car door on Burritt's right hand.[15]

11)  SMH drew a picture of Burritt's house and driveway.

12)  SMH reported the alleged assault five days after the only time that Burritt transported SMH.

13)  Burritt placed two cell phone calls to SMH's mother while in transit, at 1701 and 1702.

14)  Burritt had an operating Garmin GPS in the van.

15)  Burritt refueled in Rice Lake before dropping SMH off.[16]

16)  SMH claimed that Burritt bought alcohol at the refueling.[17]

2. Disputed Material Facts Known to Ditlefsen at 0750, 7 December 2011, at the Moment of Her Warrantless Arrest of Mr. Burritt

Defendant Ditlefsen had knowledge of the dispute over the following material facts at the moment of the warrantless home arrest and subsequent nine-hour captivity.

1) Burritt denied taking SMH to his house in Turtle Lake.

2) Burritt denied assaulting SMH.

3) Burritt stated that he called SMH's mother from Highway 70 at 1701 and 1702.[18]

4) Burritt passed Hertel before he called SMH's mother.[19]

5) Burritt did not drive on U.S. Highway 8 with SMH.[20]

---

[15] Order, pp. 5 and 9 ("Order" = Docket #65, Order Granting Summary Judgment)
[16] With respect to (1) – (15): PPFF165 (a – j) – PPFF168
[17] DPFF77 (Defendants' Proposed Finding of Fact #77), Order p. 14
[18] PPFF78 – PPFF82
[19] Id.

10

6) SMH's mother informed Ditlefsen that she did not believe SMH.[21]

7) Connie Lussier of Handi-Lift told Ditlefsen that the time, speed, and distance calculation to account for a trip starting in Hayward at 1615 with stops in Turtle Lake and Rice Lake before dropping SMH off in Birchwood at 1820 did not work out.[22]

8) The time, speed, and distance calculation to account for a trip starting in Hayward at 1615 with stops in Drummond, Turtle Lake, and Rice Lake before dropping SMH off in Birchwood at 1820 did not work out.[23]

9) Photographs taken of Burritt's property and driveway by Hayward police officers did not match SMH's drawing.[24]

10) Burritt presented at the ER in Amery on 28 November 2011 with no injuries to his right hand or any other part of his body.[25]

11) Burritt put the factual statements in 1 – 4 and 9 above in writing, faxed them to the Hayward P.D. from Handi-Lift, and the Hayward P.D. faxed them to Ditlefsen in Polk County on 2 December 2011.[26]

12) The Handi-Lift transportation logs, which Hayward P.D. provided to Ditlefsen on 2 December 2011, indicated starting and ending mileages contradicting a trip from Hayward to Turtle Lake to Birchwood.[27]

13) The Handi-Lift transportation logs, which Hayward P.D. provided to Ditlefsen on 2 December 2011, indicated starting and ending mileages contradicting a trip from Hayward to Drummond to Turtle Lake to Birchwood.[28]

14) Burritt refueled at the Rice Lake Cenex at 1744 (time date stamp 1744:33).[29]

15) Connie Lussier offered the Cenex receipt to Ditlefsen before her warrantless

---

[20] Id.
[21] PPFF172 – PPFF173
[22] PPFF170
[23] PPFF99 – PPFF118, PPFF154 - 156
[24] PPFF160, 165, 181
[25] Order, p. 6
[26] Order, pp. 9 - 10
[27] See n. 14, supra., PPFF154
[28] PPFF99 – PPFF118, PPFF154 - 155
[29] PPFF157

arrest of Burritt.[30]

16) Ditlefsen declined the receipt before her warrantless arrest of Burritt.[31]

17) Burritt did not buy alcohol when he transported SMH.[32]

18) Ditlefsen had knowledge of the Hayward Police Department's conclusion that the SMH matter required "further review", before her warrantless arrest of Burritt.[33]

19) At the time that Hayward transferred the investigation to Polk County, Ditlefsen knew of the existence of Burritt's Garmin GPS and cell phone records, and the need to examine both.[34]

Where four disputed material facts merited vacatur and remand in *Tolan*, 572 U.S. at ___, 13-551 at pp. 9 – 10, nineteen disputed material facts more than clears the *Tolan-Anderson* Rule 56 hurdle for Mr. Burritt. *Tolan* requires the court to take the opportunity in this Rule 59(e) stage to alter and amend the judgment, to deny qualified immunity and summary judgment to Ms. Ditlefsen, and set this case for jury trial.

    3. The Disputed Facts the Court Admitted

1) Ditlefsen claimed to the Lussiers, before the warrantless arrest, that she had Burritt's GPS, and that the GPS showed he was not where he claimed to have been.[35]

2) Ditlefsen told the Lussiers, "We've got him."[36]

---

[30] PPFF169 - 170
[31] Id.
[32] Plaintiff's Annotations to Defendants' Proposed Findings of Facts #77 (Burritt did not buy beer).
[33] PPFF163
[34] Id., n. 18, supra
[35] Order, p. 11, pp. 27 – 28, n. 10
[36] Id. Such evidence of mendacity is enough to defeat qualified immunity. *Kingsland*, 382 F.3d 1220, 1228 – 29 (11th Cir. 2004) (misrepresentation of probable cause evidence to support warrantless drug arrest; qualified immunity denied)

3) Ditlefsen claimed that she had driven the route Burritt claimed, without having done so.[37]

4) Ditlefsen told the Lussiers that SMH's drawing was the "spitting image" of Burritt's house.[38]

5) Ditlefsen did not have a forensic readout on Burritt's GPS from St. Croix Deputy Sheriff Demulling until 22 December 2011.[39]

Four disputed material facts that the lower courts ignored in *Tolan* merited vacatur and remand. Five disputed material facts that this court recognized are more than enough to support alteration and amendment under Rule 59(e), and order trial by jury.

    4. The Disputed Facts the Court Ignored.

1) Ditlefsen failed to comply with the Wisconsin Department of Justice, Office of Judicial Assistance, *Prosecutor's Sexual Assault Reference Book* (2009) guidance requiring "documented and properly inventoried physical evidence," viz., the cell phone records, the Garmin GPS, and the fuel receipt, before the warrantless arrest of Burritt in his home.[40]

2) Sheriff Johnson and D.A. Steffen failed to comply with the Wisconsin Department of Justice, Office of Judicial Assistance, *Prosecutor's Sexual Assault Reference Book* (2009) guidance requiring "documented and properly inventoried physical evidence," viz., the cell phone records, the Garmin GPS, and the fuel receipt, before the warrantless arrest of Burritt in his home.[41]

3) Ditlefsen failed to comply with the Wisconsin Department of Justice, Office of Judicial Assistance *Prosecutor's Sexual Assault Reference Book* (2009) guidance requiring completion of examination of "corroborating evidence," viz., the cell phone records, the Garmin GPS, and the fuel receipt, before the warrantless arrest of Burritt in his home.[42]

---

[37] N. 13, supra
[38] Id.
[39] Order, p. 16
[40] PPFF192
[41] Id.
[42] Id.

13

4) Sheriff Johnson and D.A. Steffen failed to comply with the Wisconsin Department of Justice, Office of Judicial Assistance, *Prosecutor's Sexual Assault Reference Book* (2009) guidance requiring "corroborating evidence," viz., the cell phone records, the Garmin GPS, and the fuel receipt, before the warrantless arrest of Burritt in his home.[43]

5) Mr. Burritt quit transporting children for Handi-Lift before his warrantless arrest.[44]

6) Ditlefsen had knowledge that Mr. Burritt quit transporting children for Handi-Lift before his warrantless arrest.[45]

7) SMH's drawings of Burritt's home, driveway, and property were incorrect in details – no dormer on the house, no office, the placement of trees away from the house, and the absence of three buildings in SMH's drawings on Burritt's property.[46]

8) Sawyer County Child Protective Services found Mr. Burritt not to be a "present danger threat."[47]

5. Improper Evidence Weighing by the District Court to Find "Arguable Probable Cause" In Spite of Disputed Material Facts Precluding Qualified Immunity and Summary Judgment.

1) The court gave the benefit of the doubt to the totally discredited SMH in her purported statement that she did not think she injured Burritt's hand.[48]

---

[43] Id.

[44] Order, p. 13

[45] Id., *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (conflicting testimony of movant interpreted in nonmovant's favor at Rule 56)

[46] PPFF181

[47] PPFF162. Ditlefsen attempted to rebut PPFF162 with her last-minute declaration. Docket #63. PPFF162 and Docket #63 present a material fact in controversy with regard to the potential of Mr. Burritt to commit a "new" sexual assault" so as to rationalize the warrantless arrest of him in his home. This controversy defeats arguable probable cause, qualified immunity, and summary judgment. See *Abdullahi v. City of Madison*, 423 F.3d 763 773 (7th Cir. 2005) (summary judgment rev'd in excessive force case), *Chelios v. Heavener*, 520 F.3d 678, 687 – 78 (7th Cir. 2008) (unreasonable seizure case; "The probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them[;]'")

[48] Order, p. 5 ("SMH did not think she left a mark on the man's hand because she did not slam the door that hard.")

2) The court improperly weighed the discredited SMH's statement that Burritt had gone through Drummond and Turtle Lake by disregarding the size of the fallacy of her claim.[49]

3) The court improperly weighed the testimony of SMH's mother, Dawn Schultz, as to her statement to Ditlefsen that she did not believe SMH.[50]

4) The court improperly weighed the evidence in the mileage log (121 mile trip) to the benefit of Ditlefsen, notwithstanding the discrepancy in time and distance with SMH's reported trip to Drummond and Turtle Lake before her arrival in Birchwood.[51]

5) The court improperly weighed the evidence relating to time, speed, and distance traveled by Burritt while transporting SMH by disregarding SMH's claim to have gone through Drummond.[52]

In view of the newly decided cases of *Tolan* and *Rooni*, both of which rest upon long-settled law going as far back as the 1986 *Anderson*[53], eight disputed material facts that the court ignored and five instances of improper evidence weighing are more than

---

[49]Order, p. 25 (taking SMH's age into consideration)

[50]Order, p. 26. Schultz's ambivalent testimony is material for the jury, in accordance with U.S. Const. amend. VII, not the court under Fed. R. Civ. P. 56. See *Allen v. Chicago Transit Authority*, 317 F.3d 696, 699 – 700 (7th Cir. 2003) (Posner, Richard, J.) (summary judgment on two of four plaintiffs' Title VII claims rev'd; "When a witness repeatedly contradicts himself under oath on material matters, … the witness's credibility becomes an issue for the jury; it cannot be resolved in a summary judgment proceeding. [citations omitted]"), *Thomas v. Cook County Sheriff's Dep't*, 585 F.3d 445, 453 (7th Cir. 2009) (conflicting plaintiff's witness's testimony for the jury to weigh; plaintiff's $4.45 million medical death-in-jail verdict aff'd)

[51]Order, p. 25, PPFF99 – PPFF118 (discrepancy of one hour twenty-six minutes for route including Drummond and Plaintiff's home in Turtle Lake, and discrepancy of thirty-one minutes for route excluding Drummond and including Plaintiff's home in Turtle Lake)

[52]*Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.")

[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)

enough to justify Rule 59(e) relief of alteration and amendment of the judgment so as to deny summary judgment and qualified immunity to Ms. Ditlefsen, and require Mr. Burritt's day before the jury.[54]

---

[54] *Tolan* drives another stake into the heart of the Defendants' "extraordinary circumstances" defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) *Buonocore v. Harris*, 134 F.3d 245, 252 – 53 (4th Cir. 1998), *Cannon v. City and County of Denver*, 998 F.2d 867, 874 (10th Cir. (judge's statements not "extraordinary circumstance"), *Roska v. Peterson*, 304 F.3d 1230 (10th Cir. 2003) (summary judgment rev'd; no "extraordinary circumstances"; *Roska II*), after remand, *Roska v. Sneddon*, 437 F.3d 964, 967 (10th Cir. 2006) (summary judgment as to liability in favor of plaintiff aff'd in view of defendant's failure to comply with governing child protection statute).

## **CONCLUSION**

*Tolan v. Cotton*, 572 U.S. \_\_\_, 13-551 (U.S. May 5, 2014), requires strict application of Rule 56(a), prohibits evidence weighing, and forbids the camouflaging of the Rule 56 movant's proposed facts in the guise of "clearly established law", especially in Fourth Amendment cases such as Mr. Burritt's. *Tolan* and *Rooni v. Biser*, 742 F.3d 737 (7th Cir. 2014), are new cases that rest upon old law that justify Rule 59(e) relief for Mr. Burritt, without the necessity of an appeal and the fair likelihood of reversal. In view of *Tolan* and accordance with Fed. R. Civ. P. 59(e), the court should grant Mr. Burritt leave to supplement his Rule 59(e) motion, alter and amend the judgment of 25 February 2014, deny summary judgment to the Defendants on Mr. Burritt's federal constitutional claims, vacate the order to tax costs, and set this matter for trial by jury on all his federal constitutional and Wisconsin law claims.

Date: 6 May 2014                     Respectfully submitted:

                                     PETER J. NICKITAS LAW OFFICE, LLC

                                     /s/ *Peter J. Nickitas*
                                     _____
                                     Peter J. Nickitas
                                     Attorney for the Plaintiff
                                     431 S. 7th St., Suite 2446
                                     P.O. Box 15221
                                     Minneapolis, MN 55415-0221
                                     651.238.3445/FAX 1.888.389.7890
                                     peterjnickitaslawllc@gmail.com