IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAUL BURRITT,

                  Plaintiff,                        OPINION & ORDER

    v.

                                                        12-cv-909-wmc

LISA DITLEFSEN and POLK
COUNTY,

                  Defendants.

---

      Plaintiff Paul Burritt brought this civil action under 42 U.S.C. § 1983 alleging claims for false arrest and imprisonment, plus various state law claims. This court subsequently granted defendants' motion for summary judgment, holding that: (1) defendant Lisa Ditlefsen was entitled to qualified immunity because there was at least arguable probable cause to arrest Burritt and because she relied on the advice of the Polk County District Attorney; and (2) plaintiff Burritt had failed to proffer evidence supporting liability against Polk County under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). (*See* Feb. 24, 2014 Opinion & Order (dkt. #65).) The court also held that it was inappropriate to exercise supplemental jurisdiction over Burritt's remaining state law claims. (*Id*.) Now before the court is Burritt's motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). (Dkt. #69.) Because Burritt has pointed to no manifest error of law or fact in the court's initial decision, his motion will be denied.

BACKGROUND[1]

As part of plaintiff Paul Burritt's employment with Handi-Lift Transportation, Inc., he drove an eleven-year-old child, SMH, from her therapeutic treatment program in Hayward, Wisconsin, to her home in Birchwood, Wisconsin on November 23, 2011. The distance from Hayward to Birchwood was approximately 30 miles and usually takes about 40 to 45 minutes to drive. However, the trip on November 23 took somewhere between 2 hours and 2 hours and 45 minutes.

Five days later, SMH told a counselor that a Handi-Lift driver had sexually assaulted her on November 23rd. She told a detailed story about the assault to her interviewer, Sara Ross Poquette of Sawyer County Health & Human Services. Based on the story, it was determined the alleged assault had likely occurred at the driver's home in Polk County. Accordingly, the case was transferred to that county.

On December 1, 2011, Polk County Investigator Ditlefsen received the SMH case and began her investigation. Among other things, she received a report from the Hayward Police Department, conversed with Poquette and acquired a number of documents via fax and e-mail.

Some of the evidence Ditlefsen obtained corroborated SMH's story. For example, SMH's parents confirmed she had arrived home about an hour and a half late on November 23, 2011, and stated that SMH had begun having night terrors after that date. Poquette also advised that she found SMH credible and trustworthy. Moreover, SMH had accurately described and drawn certain aspects of Burritt's home, such as the fact he owned multiple

---

[1] A more detailed discussion of the facts of this case can be found in the court's opinion on summary judgment (dkt. #65).

dogs and that his house had a non-straight driveway. Finally, the trip sheet for the November 23 transport revealed that Burritt had driven 121 miles, which roughly corresponded with a trip from Hayward to Burritt's home to SMH's home.

Despite this circumstantial evidence, the case against Burritt was not perfect. Not only did Burritt deny having assaulted SMH, but her drawing differed in some ways from Burritt's actual house. There was also some question about the route Burritt took and whether he could have traveled the required distance in the time allotted. According to Burritt, his employers, the Lussiers, brought this last point to Ditlefsen's attention. Burritt also contends that Ditlefsen made numerous false statements during her conversations with the Lussiers, such as claiming to have driven the route in question.

On the advice of Polk County District Attorney Daniel Steffen, Ditlefsen nevertheless arrested Burritt without a warrant in his home on December 7, 2011. At the time of the arrest, Ditlefsen did not yet have Burritt's cell phone records or GPS data from the trip of November 23, although she did have a search warrant for the GPS unit and cell phone records issued by Circuit Court Judge Jeffrey Anderson.

After the arrest, Ditlefsen continued to investigate, obtaining a copy of a receipt from a Cenex in Rice Lake, where Burritt had refueled. On December 9, SMH's mother contacted Ditlefsen to say that SMH was now reporting that Burritt had pulled her pants down during the assault. Ditlefsen then scheduled another interview with SMH. On December 13, Ditlefsen delivered the GPS unit for a forensic examination. She obtained Burritt's cell phone records on that same day, which supported Burritt's claims that he had been near Siren, Wisconsin, rather than near his home in Turtle Lake. Following another interview with SMH on December 16, Ditlefsen met with Deputy Shawn Demulling, who

had completed the GPS analysis. Deputy Sheriff Demulling concluded that Burritt had never been near his home in Turtle Lake, nor had he even entered Polk County during his transport of SMH.

The next day, Ditlefsen contacted Burritt and advised him she was going to recommend dismissal of the charges against him. She also asked to interview SMH again. During that interview, on January 3, 2012, SMH admitted to lying about the assault so that she would no longer have to attend counseling. Ditlefsen then contacted D.A. Steffen and advised him of SMH's recantation. On January 4, 2012, D.A. Steffen filed a formal motion to dismiss the charges against Burritt.

OPINION

To prevail on a motion to alter or amend under Rule 59(e), the movant must present newly discovered evidence or establish a "manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Nor is reconsideration "an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Disposition of a motion for reconsideration is entrusted to the district court's discretion. *Id.* (citing *Billups v. Methodist Hosp.*, 922 F.3d 1300, 1305 (7th Cir. 1991)).

I. Arguable Probable Cause

Plaintiff maintains that the court manifestly erred in finding that Ditlefsen was entitled to qualified immunity because she had "arguable probable cause" to arrest Burritt. "Arguable probable cause is established when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012) (emphasis in original) (quoting *Humphrey V. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (internal quotation marks omitted)).[2]  "Reasonableness turns on what the officers knew, not whether they knew the truth or whether they should have known more." *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007).  So long as the belief in probable cause is objectively reasonable, an arresting officer cannot be held liable, and a "case should *not* be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed." *Humphrey*, 148 F.3d at 727 (emphasis in original) (quoting *Eversole v. Steele*, 59 F.3d 710, 717-18 (7th Cir. 1995)).  Even so, qualified immunity does not protect "those who act unreasonably or 'who knowingly violate the law.'" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir. 2006) (quoting *Humphrey V. Bryant*, 502 U.S. 224, 228 (1991)).

---

[2] "Probable cause" means there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Slone*, 636 F.3d 845, 849 (7th Cir. 2011) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Probable cause "does not require police to gather enough evidence to support a conviction or even enough to demonstrate that it was more likely than not that the suspect was engaged in criminal activity." *Id.*

As this court noted in its summary judgment decision, the Seventh Circuit has "consistently held that an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods v. City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000). "Once a reasonably credible witness informs an officer that a suspect has committed a crime, the police have probable cause to arrest the suspect." *Mustafa v. City of Chi.*, 442 F.3d 544, 548 (7th Cir. 2006). As the court's summary judgment decision also recognized, however, probable cause may be lacking where an officer has reason to believe the complaint is "fishy." *Guzell v. Hiller*, 223 F.3d 518, 520 (7th Cir. 2000). "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest," *Sornberger*, 434 F.3d at 1016 (quoting *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)), and police must pursue reasonable avenues of investigation, *BeVier*, 806 F.2d at 128. Even so, "an officer who has established cause on every element of the crime need not continue investigating to check out leads or test the suspect's claim of innocence." *Id.* (citing *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 437-42 (7th Cir. 1986)).

Here, Ditlefsen *had* a report that a crime had taken place from the purported victim, albeit one who was eleven years of age: SMH unequivocally reported that her van driver, Burritt, had sexually assaulted her. As set forth above, Ditlefsen also had a number of other pieces of evidence supporting SMH's story, including (1) an endorsement of SMH's credibility by her interviewer (who was a qualified social worker); (2) a suspicious transportation log; (3) corroborating testimony from SMH's parents; and (4) the undisputed fact of a trip that should have taken about 45 minutes and actually took a full two hours (at minimum). Even given the victim's age and certain inconsistencies in SMH's story, Ditlefsen at least had *arguable* probable cause to make the arrest.

Plaintiff's motion for reconsideration in large part repeats the same arguments made and rejected on summary judgment. Accordingly, the court addresses them only briefly. *See Caisse Nationale*, 90 F.3d at 1270 (reconsideration not appropriate vehicle for rehashing previous arguments). *First*, he points once again to the evidence tending to undermine SMH's story: (a) the Lussiers purportedly drew Ditlefsen's attention to the impossibility of driving the route SMH described in the time that elapsed; (b) the fact that Burritt was uninjured despite SMH's testimony that she slammed a door on his hand; and (c) the fact that SMH's drawings of Burritt's home and property were "incorrect on details." The court has already considered each of these facts, concluding that even if credited, those facts did not render Ditlefsen's decision to arrest "objectively unreasonable." *Humphrey*, 148 F.3d at 725. The court finds no manifest error of fact or law in that legal conclusion and declines to revisit this argument further. *See Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("The repetition of previous arguments is not sufficient to prevail." (quoting *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 165 n.9 (1st Cir. 2004)).

*Second*, plaintiff again argues that Ditlefsen should have waited until she had the phone records and GPS data before arresting him, and that her failure to do so amounts to a failure to "pursue reasonable avenues of investigation" per *BeVier*. In addressing this argument in its original opinion on summary judgment, this court acknowledged being somewhat troubled by Ditlefsen's decision to proceed with an arrest just as she was executing a search warrant to obtain evidence that could well clear up questions about the accuracy of SMH's version of events. Still, as already explained, "an officer who has established cause on every element of the crime need not continue investigating to check out leads or test the suspect's claim of innocence." *BeVier*, 806 F.2d at 128.

7

Here, the GPS unit in particular could have helped -- and ultimately did help -- establish Burritt's innocence, but given the facts known to Ditlefsen on December 7, 2011, she was not *required* to obtain that evidence before effecting Burritt's arrest, particularly since it was not "readily available" and in fact required a time-consuming forensic analysis. Burritt's suggestion that Ditlefsen should have "hacked" the GPS via Google Earth, rather than awaiting the results of the forensic examination, is absurd: as defendants point out, no reasonable investigator would conduct a forensic examination of a crucial piece of evidence without proper credentials and training, given the possibility of destroying the evidence and the doubtfulness of the admissibility of any evidence obtained in this way.

Plaintiff also points to two other Seventh Circuit cases in support of his argument: *Sornberger v. City of Knoxville, Illinois*, 434 F.3d 1006 (7th Cir. 2006), and *Maxwell v. City of Indianapolis*, 998 F.2d 431 (7th Cir. 1993). As an initial matter, plaintiff offers no reason why he could not have cited these cases in his original opposition to summary judgment. In any event, neither case points to a manifest error of law by this court. On the contrary, both of these cases involve instances of mistaken identity, in which (a) the falsely-accused suspects bore almost no resemblance to the perpetrator, and (b) there was little to no other evidence suggesting the suspects had committed a crime. For example, in *Sornberger*, while there was competing evidence as to whether the plaintiff, Scott, resembled the person who had robbed a bank, most of it favored Scott, who was blond, fair and had a mustache, whereas the only eyewitness to the crime described the robber as dark-haired, dark-complected and clean-shaven. Moreover, the *only* other evidence implicating him was the fact that he had financial problems. 434 F.3d at 1015. The *Sornberger* court held that the defendants lacked qualified immunity given: (1) the "exceedingly thin" evidence in the

8

record; and (2) the likelihood that the execution of a search warrant would have confirmed or undermined Scott's alibi before arresting him. *Id*. at 1016. In contrast, in this case, there was significant, objective evidence supporting the probability that Burritt had committed the crime, and there was no doubt as to his identity.

Similarly, in *Maxwell*, the plaintiff was arrested because his coworkers incorrectly reported that he was a fugitive featured on *America's Most Wanted*. The description of the fugitive was a white male standing 5'11", weighing 175 pounds, and missing the tip of his left index finger. Maxwell was a white male standing 6'5", weighing 270 pounds, and missing the tip of his left *middle* finger. *Maxwell*, 998 F.2d at 432-33. The Seventh Circuit concluded these discrepancies were so significant -- a weight difference of nearly 100 pounds, a height difference of half a foot, and a *different missing fingertip* -- that a reasonable jury could find that reasonable officers would have known they lacked probable cause, particularly because they had no other grounds to suspect that Maxwell had engaged in any unlawful conduct. *Id*. at 435.

*Third*, plaintiff contends the court "ignored" certain facts on summary judgment. Most of those facts deal with various officials' alleged failures to comply with guidance from the Wisconsin Department of Justice, Office of Judicial Assistance *Prosecutor's Sexual Assault Reference Book*, by gathering corroborating physical evidence before arresting Burritt. This is a *non sequitur*. While plaintiff cites *Hope v. Pelzer*, 536 U.S. 730 (2002), for the proposition that DOJ guidelines can be a source of "clearly established law," the fact that the DOJ advises its investigators to acquire physical evidence, presumably including evidence like the GPS data, does not compel (or even suggest) a legal conclusion that a Polk County investigator lacked arguable probable cause to arrest Burritt, particularly since the Seventh

Circuit has repeatedly held that a single victim or eyewitness statement is enough to establish probable cause.

Burritt contends that the court also ignored the fact that SMH's drawing did not perfectly match his property and that he had stopped transporting children for Handi-Lift before his arrest. On the contrary, the court explicitly concluded that any inconsistencies or missing pieces in SMH's drawing did not render Ditlefsen's belief that she had probable cause to arrest Burritt objectively unreasonable. (*See* Feb. 24, 2014 Opinion & Order (dkt. #65) 25.) As to the fact that Burritt stopped driving for Handi-Lift three days before his arrest, while that *could* have rendered the perceived need for immediate arrest less urgent, it does not undermine the reasonableness of Ditlefsen's belief that Burritt had already committed a crime.

*Fourth*, plaintiff argues that the court improperly weighed evidence in favor of defendants by crediting "the totally discredited SMH" and "disregarding the size of the fallacy of [SMH's] claim." The fact that SMH has since been "totally discredited" has *no* bearing on the probable cause determination, since that depends on what Ditlefsen knew at the time of arrest. *See United States v. Breit*, 429 F.3d 725, 728 (7th Cir. 2005). Likewise, the fact that certain portions of SMH's story were not entirely consistent with the other evidence in the case – for example, that her claim to have gone through the Town of Drummond did not fit with the mileage log showing 121 miles driven or the time-speed-distance calculations -- does not constitute the court's improper weighing of the evidence but rather a recognition that some inconsistencies are to be expected in any witness's story, particularly that of a minor child,. *See, e.g., Rankin v. Evans,* 133 F.3d 1425, 1441 (11th Cir. 1998) (statement of three-and-a-half-year-old child was sufficient to establish probable

cause despite inconsistencies); *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1450 (10th Cir. 1985) (inconsistencies in the statements of five-year-old and three-year-old did nothing to undermine probable cause, even where statements contradicted themselves and each other). Again, all that is required for qualified immunity is that an arresting officer's belief not be "objectively unreasonable." In light of this case law, the court does not find Ditlefsen's decision to accept the core of SMH's statement to be objectively unreasonable despite minor inconsistencies in SMH's description of the route itself.

*Finally*, plaintiff contends that the court improperly weighed the testimony of SMH's mother, Dawn Schultz, as to when she informed Ditlefsen that she no longer believed her daughter's version of events. Plaintiff contends that Schultz testified at one point that she informed Ditlefsen of her doubts *before* Burritt's arrest, while the court credited her later statement that she did not inform Ditlefsen of her doubts until afterward. The court disagrees. Schultz never actually testified to having informed Ditlefsen of her doubts *before the arrest*. On the contrary, Schultz testified she had no recollection of when she met with Ditlefsen in person. (Schultz Dep. (dkt. #23) 38:4-12.) Schultz also testified that she spoke to investigator Ditlefsen "after the interview" at which time Schultz believed she told Ditlefsen that she didn't believe her daughter, but only knew that she had told Ditlefsen "at some point." (*Id.* at 39:21-40:2.) Burritt simply did *not* present evidence to support a finding that the conversation occurred before December 7. If anything, Schultz's later statement that she did not inform Ditlefsen of her doubts until December 9 (*see id.* at 65:2-66:20) serves to *clarify* her earlier, vague testimony, rather than to create a genuine dispute of material fact.

Thus, plaintiff has identified no manifest error of law or fact in the court's earlier ruling that objective evidence available to Ditlefsen at least established arguable probable cause.[3]

## II. Extraordinary Circumstances

Plaintiff also argues that the court misapplied the doctrine of extraordinary circumstances. Most of these arguments are new to his motion for reconsideration, justifying their rejection on that ground alone. *See Caisse Nationale*, 90 F.3d at 1270. All likewise fail on their merits.

Plaintiff devotes significant time arguing that D.A. Steffen lacks both absolute and qualified immunity for the advice he gave, but D.A. Steffen is not a defendant in this case and his immunity is not at issue. Plaintiff also contends that this court relied on mere *dicta* in *Davis v. Zirkelbach*, 149 F.3d 614 (7th Cir. 1998), in applying the doctrine of extraordinary circumstances to the facts of this case. That is patently incorrect.[4] Finally, plaintiff's contention that the doctrine should not apply because D.A. Steffen's advice was "worthless, unworthy of following" is preposterous. Applying such a rule would strip police

---

[3] Plaintiff also moved to supplement his Rule 59 motion (dkt. #73), pointing to a recent Supreme Court case dealing with excessive force, *Tolan v. Cotton*, 134 S. Ct. 1861 (2014), to support his contention that the court improperly resolved factual disputes in defendants' favor. Having read and considered this supplement, the motion will be granted, but *Tolan* does not change the court's analysis. In *Tolan*, the Supreme Court concluded that the Fifth Circuit had improperly credited the movant's version of events despite the non-movant production of directly contradictory evidence -- by crediting testimony for example that: (1) a front porch was "dimly lit" despite the non-movant testifying to the presence of numerous lights; and (2) Tolan was moving at the time he was shot despite Tolan testifying that he was on his knees and "wasn't going anywhere." The remainder of plaintiff's supplemental brief merely repeats, nearly word-for-word, the arguments made in his original brief and reply. Accordingly, plaintiff has identified *no* "directly contradictory" evidence that the court failed to credit in resolving defendants' motion for summary judgment.

[4] While the claims against the *prosecutor* defendants in *Davis* were resolved on statute of limitations grounds, 149 F.3d at 617-19, the § 1983 claims against the police *were* resolved under the doctrine of extraordinary circumstances. *Id.* at 619-21.

officers of qualified immunity whenever they sought advice of counsel that turned out to be wrong, encouraging them to "maintain[] a deliberate ignorance" -- a result that the *Davis* court recognized as "undesirable" and declined to endorse.  *See id.* at 620-21.

The only argument plaintiff raises that merits any meaningful discussion is his contention that Ditlefsen failed to prove she "neither knew nor should have known" of the relevant legal standard.  *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).  While undoubtedly a part of the extraordinary circumstances inquiry in the advice-of-counsel context, in *Davis*, the Seventh Circuit addressed that inquiry by considering whether the officer had "reason to believe that [the prosecutor's] advice was erroneous."  149 F.3d at 620.  This makes sense, since qualified immunity is not meant to protect officers who knowingly violate the law.  *Sornberger*, 434 F.3d at 1014.

Here, Ditlefsen had no reason to believe D.A. Steffen's advice was erroneous.  On the contrary, the advice was only given after multiple meetings and a full understanding of the facts, and it came from an experienced and competent attorney.  Moreover, the advice was precise and unequivocal, and Ditlefsen took action soon after speaking with D.A. Steffen. *See Davis*, 149 F.3d at 620 (factors governing whether reliance on advice of counsel constitutes extraordinary circumstances).  In light of all these facts, the court adheres to its original conclusion that Ditlefsen had no reason to know that this warrantless arrest violated the Fourth Amendment (assuming that it did), and Burritt's motion for reconsideration on this point will also be denied.[5]

---

[5] Burritt unconvincingly cites to a number of additional cases supposedly standing for the proposition that advice of an attorney, without more, is not enough to constitute extraordinary circumstances.  For example, *Roska v. Peterson,* 304 F.3d 982 (10th Cir. 2002), *withdrawn in part*, *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003), involved defendants who were advised

**III. Other Arguments**

Plaintiff half-heartedly makes a number of other arguments in his motion to reconsider, which the court addresses briefly. *First*, plaintiff challenges the warrantless entry into his home, arguing that there were no exigent circumstances supporting an in-home warrantless arrest. (Pl.'s Br. Support (dkt. #70) 35-37.) However, he raised no such argument on summary judgment and so it cannot serve as grounds for reconsideration. *See Caisse Nationale*, 90 F.3d at 1270; *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) (motion for reconsideration "is an improper vehicle to introduce evidence previously available or to tender new legal theories").

*Second*, in a single sentence in his opening brief, plaintiff apparently hopes to resurrect his claims against Polk County: "To the extent that the D.A. is the policymaker of Polk County in these circumstances, Mr. Burritt presents a jury issue on his *Monell* claim against Polk County." (Pl.'s Br. Support (dkt. #70) 39.) As the court previously found, however, plaintiff produced no evidence that D.A. Steffen *actually was* the policymaker of Polk County in the realm of law enforcement and arrests, nor, for that matter, did he present any evidence of a failure to train or supervise Ditlefsen in opposing summary judgment. Plaintiff's perfunctory attempt to revitalize this claim in his opening brief for

---

that a removal was "probably justified," but lacked any evidence that they were advised they did not need to knock, obtain a warrant, or seek pre-deprivation procedures, which meant they could not have actually relied on legal advice in taking those actions. *Id.* at 1000-01. Similarly, *Cannon v. City and County of Denver*, 998 F.2d 867 (10th Cir. 1993), held only that the factors articulated in *V-1 Oil Co. v. State of Wyoming, Department of Environmental Quality*, 902 F.2d 1482 (10th Cir. 1990), were not so overwhelmingly met as to establish qualified immunity. In contrast, here, the court concluded that *all* the *V-1 Oil* factors weighed in defendants' favor. Finally, *Buonocore v. Harris*, 134 F.3d 245 (4th Cir. 1998), involved a defendant who also failed to establish the *V-1 Oil* factors, *id.* at 252-53, but "more fundamentally, . . . [he] *did not follow*" the advice he received. *Id.* at 253. Here, there is no dispute that Ditlefsen did, in fact, follow D.A. Steffen's advice.

reconsideration, and in additional argument in his reply,[6] in no way shows that the court's original summary judgment decision constituted a manifest error of fact or law.

ORDER

IT IS ORDERED that:

1) Plaintiff Paul Burritt's motion to amend or correct the judgment (dkt. #69) is DENIED.

2) Plaintiff's motion to supplement (dkt. #73) is GRANTED.

Entered this 30th day of March, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[6] A reply brief is *not* an appropriate vehicle for presenting new arguments or legal theories to the court. *United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996). Additionally, once again, Burritt has tried to present evidence previously available and new legal theories, which is inappropriate in a motion to reconsider. *Bally Export Corp.*, 804 F.2d at 404. The material in his reply -- which apparently seeks to hold the *Sheriff* responsible as a policymaker, and faults various Polk County officials for not having heard of the DOJ's *Prosecutor's Sexual Assault Reference Book* -- should have been raised in opposing summary judgment if Burritt sought to rely on it to create a triable issue of fact on *Monell* liability.